## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO.:

OLEG S. PROKOPEV,
a citizen of a foreign country,

Plaintiff,

v.

EVGENY IGOREVICH LUNEGOV aka EVGENY LUNEGOV, an individual and a citizen of
Florida;
TATIANA LUNEGOVA, an individual and a citizen of Florida and a spouse of Defendant
ALFA PRO INC.,  (FEI/EIN Number 83-3966275), a Florida entity
ROCKET MORTGAGE, LLC, a Michigan entity;
RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC, (FEI/EIN Number 35-2612040), a
Florida entity
CIVIC FINANCIAL SERVICES, LLC, a California entity,

RUSLAN CHERNYSHOV, an individual and a citizen of Florida;
R&B ONE CORPORATION, (FEI/EIN Number 46-2926015), a Florida entity;
R&B ONE AUTO SALES INC. (FEI/EIN Number 81-1288297), a Florida entity;

VICTOR MIHAILOV, an individual and a citizen of Florida,

Defendants.
_____/

### **COMPLAINT**

COMES NOW, PLAINTIFF, OLEG PROKOPEV by and through his undersigned

counsel, files this Complaint and sues EVGENY IGOREVICH LUNEGOV (Lunegov),

TATIANA LUNEGOVA (Lunegova), ALFA PRO INC. (Alfa Pro),  ROCKET MORTGAGE,

LLC, RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC (RAD), RUSLAN

CHERNYSHOV (CHERNYSHOV),  R&B ONE CORPORATION (R&B ONE), R & B ONE

AUTO SALES INC. (R & B ONE AUTO) and VICTOR MIHAILOV (Mihailov), collectively

Defendants and states:

*Prokopev v. Lunegov et al*

## JURISDICTION AND VENUE

1.        Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. More specifically this controversy is between <u>a citizen of Russia and citizens of Florida.</u>

2.        Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because the Defendant resides in Florida.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES GENERAL ALLEGATIONS

3.        At all relevant times Plaintiff, OLEG S. PROKOPEV (Oleg Sidorovich Prokoviev (Олег Сидорович Прокопьев – Russian))   resided in and was and is a citizen of Russia.

4.        At all relevant times Defendant, EVGENY LUNEGOV resided in and was and is a citizen of Florida who resided  in the Middle District of Florida.

5.        At all relevant times Defendant, TATIANA LUNEGOVA resided in and was and is a citizen of Florida who resided  in the Middle District of Florida and was Mr. Lunegov's spouse.

6.        At all relevant times Defendant, RUSLAN CHERNYSHOV  resided in and was and is a citizen of Florida who resided  in the Middle District of Florida.

7.        At all relevant times Defendant, VICTOR MIHAILOV resided in and was and is a citizen of Florida who resided  in the Southern District of Florida.

*Prokopev v. Lunegov et al*

8.    Defendant ROCKET MORTGAGE, LLC is a company with a  principal place of business of 1050 Woodward Ave Detroit, MI and is a mortgagee of the property located at 1000 Jeater Bend Dr, Kissimmee, FL 34747

9.    Defendant ALFA PRO INC is a company with a  principal place of business of 52 RILEY RD 521 CELEBRATION, FL 34747. ALFA PRO INC's current president is Defendant EVGENY IGOREVICH LUNEGOV.

10.    Defendant R&B ONE CORPORATION is a company with a  principal place of business of 1326 W, MILLER AVE ORLANDO, FL 32805. R&B ONE CORPORATION's current president is Defendant RUSLAN CHERNYSHOV .

11.    Defendant R & B ONE AUTO SALES INC is a company with a  principal place of business of 1326 W MILLER AVENUE ORLANDO, FL 32805. R & B ONE AUTO SALES INC's current president is Defendant RUSLAN CHERNYSHOV.

12.    Defendant RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC (RAD) is a company with a  principal place of business of 1000 JEATER BEND DR CELEBRATION, FL 34747. RAD's current president is Defendant EVGENY IGOREVICH LUNEGOV.

13.    Defendant CIVIC FINANCIAL SERVICES, LLC, a California entity is a company with a  principal place of business of 2015 Manhattan Beach Blvd., Suite 106 Redondo Beach, CA 90278 and is a mortgagee of the property located at 1012 Jeater Bend Dr Kissimmee, FL 34747

*Prokopev v. Lunegov et al*

## ALLEGATIONS COMMON TO ALL CLAIMS

14.    Mr. Prokopiev and all the individual Defendants, the Russian language in the native tongue.

15.    Mr. Prokopiev's knowledge of the English language is very limited. He can state his name, go grocery shopping and ask of directions but that is about as far as his knowledge of the English language extends.

16.    In the time period to this action, Mr. Prokopiev resided and lived in Russia. He would seldom visit Florida mainly for the purposes of spending his vacation in the Orlando area.

17.    Mr. Lunegov is a fluent English speaker with experience of conducting business in the United States and well as with the knowledge of this country's banking system as well as with the registering and running of businesses in the State of Florida.

18.    In the time period to this material to this action, Mr. Lunegov resided in and conducted business from  the Orlando, FL area.  As of the date of this action, Mr. Lunegov resides in Kissimmee, FL.

19.    Mr. CHERNYSHOV 's knowledge of the English language is unknown, however,  at the time of filing of this Complaint, Mr. CHERNYSHOV  was the owner of at least two Florida businesses both of which are defendants in this action.

20.    At all times material to this action, Mr. Lunegov and Mr. CHERNYSHOV  had a business relationship which are relevant to the Plaintiff's action.

## THE PARTNERSHIP AGREEMENT DATED MAY 17, 2019 BETWEEN THE PLAINTIFF AND MR. LUNEGOV

21.    In the early days of March 2019, Mr. Lunegov approached the Plaintiff with a proposal to create a joint business in the Orlando area.

*Prokopev v. Lunegov et al*

22.     At some point prior to May 17, 2019, Mr. Prokopiev and Mr. Lunegov decided to form a partnership whereby, Mr. Lunegov using Mr. Prokopiev's money and his own purported knowledge of conducting business in Florida will establish a business entity or entities to acquire the residential real estate in need of repair, repair t and reselling it for profit and acquiring the used vehicles for the same purpose.

23.     On May 17, 2019, Mr. Prokopiev and Mr. Lunegov entered into a Partnership Agreement attached to this Complaint as Ex. 1. (Ex. 1 consists of a copy of the Partnership Agreement drafted in the Russian language, along with a copy of the certified translation of the said agreement.)

24.     Mr. Lunegov enticed  the Plaintiff by a promise of a large return on the Plaintiff's investment and a promise of safety of the Plaintiff's investment.

25.     The purpose of this Partnership Agreement was to "[C]onfirm … the [Parties'] prior agreements to establish, develop and conduct joint business in the United States of America remain in effect and consist of the establishment of one or more legal entities to conduct business in real estate, its acquisition, resale, improvement, repair, lease or joint use, and similar activities with automobiles: cars or commercial vehicles."

26.     The Partnership Agreement designated Mr. Prokopiev as  "the main investor in the company and have the right of priority to make any investment with additional conditions on the distribution of profits, which must be confirmed and agreed by both parties." Oleg Prokopev shall also have the right to issue, sell or acquire shares in the joint corporation, but subject to notification to Evgeny Lunegov."

27.     The Partnership Agreement designated Mr. Lunegov as "the working partner, undertaking to conduct all the business activities of the company aimed at generating

*Prokopev v. Lunegov et al*

profits, and shall have priority in obtaining or acquiring shares owned by the company or other shareholders, the terms of obtaining or acquiring shares must be agreed upon."

28.  On or about March 6, 2019, and in furtherance of the Parties' intent of conducting the partnership activities in the United States, Mr. Lunegov established a Florida entity called, Alfa Pro Inc. (Alfa Pro).

29.  At that time Alfa Pro was registered at 52 Riley Road# 521, Celebration, Florida 34747 [and]

> been founded for the purpose of joint business and generating profit, in which Oleg Prokopev [was] the President and the holder of 100% of the shares, owning 1,000 shares to ensure the safety of his investments, and Evgeny Lunegov [was] the Vice President and the official representative of the company with the right to open bank accounts, represent the company in courts, government bodies and any other agencies; to enter into transactions on behalf of the company to acquire or sell movable or immovable property as well as other transactions that are intended to generate profit and are not contrary to the laws of the country or state in which they are entered into or performed, including transactions for the receipt and payment of loans, which must be approved by Oleg Prokopev. Evgeny Lunegov [also had] the right to hire personnel, contractors and other service providers, as well as to pay their salaries and remuneration, if this is necessary for the company's current operations and subsequent profits.

30.  Mr. Prokopiev and Mr. Lunegov agreed to share the business profits equally following the "50%-50%" formula but with a caveat that the investing partner gets to recoup his investment before the corporate profits are distributed:

> Calculations of the income received by the business partners shall be made as follows: the first 24% per annum shall be received by the business partner who has contributed the amount from which the income has been received; the next 24% shall be received by the second business partner, but no more than the remaining profit; profits over 48% per annum shall be divided in half.

31.  Mr. Lunegov, the partner who registered Alfa Pro, has opened a business bank account in Alfa Pro's name with the Bank of America Account number: 8981 0517 2773 to which he had access and control.

*Prokopev v. Lunegov et al*

## THE JOINT VENTURE AND MANAGEMENT AGREEMENT DATED JANUARY 31, 2020 BETWEEN THE PLAINTIFF AND MR. LUNEGOV

32.     On January 31, 2020, Mr. Prokopiev and Mr. Lunegov entered into another agreement titled "Joint Business Establishment and Management Agreement" attached to this Complaint as Ex. 2. (Ex. 2 consists of a copy of "the Joint Business Establishment and Management Agreement" drafted in the Russian language, along with a copy of the certified translation of the said agreement.

33.     The January 31, 2020 "superseded the earlier, May 17, 2019 Partnership Agreement" and "reflect[ed] in more detail the essence of the Parties' agreements regarding the manner in which they will conduct their business together."

34.     The January 31, 2020 Agreement relates back to May 2019 and governs the business relationship between Mr. Lunegov and the Plaintiff as of the first time the Plaintiff transferred the funds to Alfa Pro in 2019.

35.     The January 31, 2020 Agreement, designated Mr. Prokopiev as the "Investing Partner" and Mr. Lunegov as the "Working Partner".

36.     In the January 31, 2020 Agreement, the Parties acknowledge that "Oleg S[idorovich] Prokopev does not speak English, is not aware of the current U.S. corporate law regulation, the nature of the Corporation is not known to him" and that "According to assurances of Evgeny I. Lunegov, whom Oleg S. Prokopev trusts wholeheartedly, Oleg S. Prokopev is the sole shareholder and owner of the Corporation at the time of its establishment and holds the office of the President. As assured by Evgeny I. Lunegov, Oleg S. Prokopev, as the sole shareholder of 100% of the Corporation's shares, owns 1,000 shares of the Corporation." (Ex. 2 at pg. 1).

*Prokopev v. Lunegov et al*

37.     Mr. Lunegov established Alfa Pro and, after the establishment of Alfa Pro, Mr. Lunegov "offered Oleg S. Prokopev to invest seven hundred thousand (700,000) to eight hundred fifty thousand (850,000) U.S. dollars by transferring the said funds to the Alfa Pro's account for conducting joint business in the field of real estate (acquisition, improvement or repair, resale, lease or joint use) and vehicles (acquisition, improvements or repair, resale, and lease)."

38.     As a "working partner", Mr. Lunegov "conduct[ed] and control[led] all organizational and managerial activities, in particular, hire[d] the necessary personnel, contractors, service providers, having received prior approval of Oleg S. Prokopev regarding the amount of payment for their services, as well as [had] the right to pay salaries and remuneration previously agreed by Oleg S. Prokopev if this is necessary for the Corporation's current operations and subsequent profits."

39.     Mr. Lunegov undertook a duty to act "solely for the best interests of the Corporation and its owner - Oleg S. Prokopev" and "guarantee[ed] the safety of Oleg S. Prokopev's investments and the earning of at least 24% per annum (First Priority), and in addition, participation in the Third Priority profit of the Corporation." (Ex. 2 at pg. 3 ).

40.     Mr. Lunegov also guaranteed that the sums the Plaintiff already transferred or will transfer to Mr. Lunegov will be used for the purposes of generating an income for the joint venture with the agreed upon benefits flowing to the Plaintiff. (Ex. 2 at pg. 3 ).

## THE FUNDS TRANSFERS MADE BY THE PLAINTIFF TO THE ALFA PRO'S BUSINESS ACCOUNT

41.     Pursuant to both Agreements, the Plaintiff made the transferred the following amounts in the USD into the Alfa Pro's account during the period from March 2019 to May 2022:

*Prokopev v. Lunegov et al*

> In 2019  – $1,118,700.00
>
> In 2020  – $232,240.00
>
> In 2021  – $79,500.00
>
> In 2022  – $236,002.27
>
> Totaling to $1,666,442.27

42. These amounts were sent by the Plaintiff as an investment into Alfa Pro, for Alfa Pro to make business and turn profit and in reliance of Mr. Lunegov's promise to operate in the  best the Plaintiff and Alfa Pro and in reliance on Mr. Lunegov's guarantees of the safety the Plaintiff's investments and the earning of the Plaintiff's investment at least 24% per annum.

43. The amounts in paragraph 41 may not be exact but they are substantially within the ballpark of what the Plaintiff transferred to Mr. Lunegov via Alfa Pro.

## MR. LUNEGOV'S  AND ALFA PRO'S WRONGFUL ACTIONS

44. Mr. Lunegov was the sole operator and the manager of Alfa Pro and  person in charge of Alf Pro's day-to-day operation and financial decision making.

45. From March 6, 2019, when Alfa Pro was established by Mr. Lunegov to around July 30, 2022, when Mr. Mihailov  became the Alfa Pro's President,  Mr. Lunegov had zero accountability to anyone about how he was running Alfa Pro or what he was doing with the vast sums of money the Plaintiff transferred to the Alfa Pro's account.

46. Mr. Lunegov provided no information of any kind, including financial information regarding the profitability or lack thereof of Alfa Pro, or regarding the security and the state of the Plaintiff's investment.

*Prokopev v. Lunegov et al*

47.    To every request made by the Plaintiff to Mr. Lunegov regarding the safety of his investment, financial profitability or lack thereof of Alfa Pro or what is Mr. Lunegov is going to promote the best interest of the Plaintiff or Alfa Pro, Mr. Lunegov would say that everything is fine, the investment is safe and that the profit to the Plaintiff will be paid soon, along with his initial investment.

48.    On numerous occasions the Plaintiff demanded immediate repayment of all investments transferred to Alfa Pro from Mr. Lunegov since Mr. Lunegov improperly performed his  obligations under the Agreement and Mr. Lunegov's actions gave the Plaintiff reasonable grounds to believe that there is a real threat to the safety of the investment the Plaintiff made.

49.    Mr. Lunegov failed to return the Plaintiff's investment.

**<u>Alfa Pro's Financial and Accounting Records</u>**

50.    Although on paper, the Plaintiff was the Alfa Pro's President form April 6, 2020, it was solely Mr. Lunegov who was managing and running Alfa Pro. The Plaintiff was completely in the dark about what Mr. Lunegov was doing with Alfa Pro or with the Plaintiff's money.

51.    As of the date of the filing of this action, Mr. Lunegov failed to provide the source documents supporting Alfa Pro's financial statements  or Alfa Pro's financial statements.

52.    Mr. Lunegov failed to provide to the Plaintiff any accounting documents showing or supporting, income or loss from the sale of cars.

53.    Mr. Lunegov failed to provide to the Plaintiff any accounting documents showing or supporting the amount Alfa Pro paid for the repair of cars.

*Prokopev v. Lunegov et al*

54.  Mr. Lunegov failed to provide to the Plaintiff with the accounting records supporting the  amount paid by Alfa Pro for the purchase of real estate or with any contracts for sale or purchase of the real estate.

55.  Mr. Lunegov failed to provide to the Plaintiff with any accounting documents showing or supporting the amount Alfa Pro paid for the repair of the real estate it acquired.

56.  Without these documents the establishing of Alfa Pros income or loss from the sale of the vehicles and the real estate is practically impossible.

### The Lunegovs' and Alfa Pro's Real Estate Properties

57.  Prior to meeting the Plaintiff in the Spring of 2019, Mr. Lunegov did not own any real estate property.

58.  On or about August 13, 2021 and after receiving the funds from the Plaintiff, Mr. Lunegov and Ms. Lunegova acquired a residential property located at 1000 JEATER BEND DR, KISSIMMEE, FL (The 1000 Jeater Bend Property) for $590,000.00. (Ex. 19).

59.  On August 20, 2021, The 1000 Jeater Bend Property was mortgaged to ARC HOME LOANS LLC (Ex. 20) which was satisfied with the satisfaction recorded on November 28, 2022. (Ex. 21). On November 11, 2022 the 1000 Jeater Bend Property was re-mortgaged to Rocket Mortgage, LLC for $609,000.00. (Ex. 20-1).

60.  However, the fact that the Lunegovs obtained the mortgage for The 1000 Jeater Bend Property a week after the became the Property's owners means very little since, at least part of the Plaintiff's funds, can be directly traceable to The 1000 Jeater Bend Property, having unjustly enriched the Lunegovs in that property.

*Prokopev v. Lunegov et al*

61.  On or around July 25, 2019 Alfa Pro through  Mr. Lunegov  purchased a properly located at 7723 Indian Ridge Tri N, Kissimmee, FL 34747 (the Indian Ridge property) for $197,150.00 (Ex. 25)

62.  The mortgage for the Indian Ridge property was not obtained until September 3, 2019. (Ex. 22)

63.  On March 20, 2020 Alfa Pro, through Mr. Lunegov sold the Indian Ridge property for $255,000.00. (Ex. 23)

64.  It is unclear why Mr. Lunegov needed to mortgage the Indian Ridge property a month after the Property was acquired, but nor Alfa Pro nor Mr. Lunegov paid the Plaintiff any portion of the sales proceeds from the Indian Ridge property.

65.  On  August 4 2020 Alfa Pro, through Mr. Lunegov acquired a residential property located at 904 Cypress Wood Ln, Sarasota FL (the Cypress Wood Property) for $185,900 (Ex. 28)

66.  On September 28, 2021, Alfa Pro and Mr. LUNEGOV, individually executed a promissory note in the principal amount of $225,900,00. (Ex. 26). Note was secured by a mortgage on the Cypress Wood Property. (Ex. 26)

67.  Mr. Lunegov and Alfa Pro defaulted on the Note and the Mortgagee, KIAVI FUNDING, INC. filed a foreclosure action against Alfa Pro and Mr. Lunegov in the Manatee County Circuit Court under case number 412022CA004655CAAXMA. (Ex. 26)

68.  It is not clear why Mr. Lunegov and Alfa Pro needed to mortgage the Cypress Wood Property nearly a year after the Property was purchased or what Mr. Lunegov did with the mortgage proceeds but what is clear is that the foreclosure case resulted in the

summary judgment against Mr. Lunegov and Alfa Pro in the amount of $ l44,853.61. (Ex. 27)

69.   The final judgment of mortgage foreclosure entered on March 7, 2023 by Judge Edward Nicholas, among other things, states that "THIS action having come before the Court on Plaintiff's Motion for Summary Judgment of Foreclosure and Request for Attorneys' Fees on Counts I on March 1, 2023, with counsel for Plaintiff and no Defendants having appeared." (Ex. 27)

70.   The Cypress Wood Property is going to be sold at the foreclosure sale on June 7, 2023 (Ex. 27))

71.   It is very clear that Mr. Lunegov made a clever financial decision not to defend the foreclosure action in a hope to collect the equity left once KIAVI FUNDING recovers its judgment amount.

72.   The equity for the  Cypress Wood Property left after KIAVI FUNDING recovers its judgment amount belongs to the Plaintiff.

73.   Throughout the period material to this action which runs from March 2019 to May 2022, Mr. Lunegov had unrestricted access to the Plaintiff's personal account and whatever funds, on paper, were deposited into this account were syphoned by Mr. Lunegov  supposedly for Alfa Pros business needs.

74.   As of the date of filing of this Complaint the Plaintiff did not receive any amount of his principal investment or of any the profits generated by Alfa Pro or by any other of Mr. Lunegov's businesses.

75.   Mr. Lunegov  used the corporate entity of Alfa Pro for his personal benefit so as to blur the distinction between corporate and his personal affairs. Mr. Lunegov used the

*Prokopev v. Lunegov et al*

corporate entity  of Alfa Pro to defraud the Plaintiff into keep giving him money believing that the principle of this money will be resulted to him along with the business profit supposedly generated by Alfa Pro whereas Mr. Lunegov misappropriated the Plaintiff's funds for his personal benefit and gain.

76.     The fraudulent or improper use of the corporate form caused injury to the Plaintiff.

**Plaintiff's two separate payments to Mr. Lunegov $35,992.19 and $70,445.85**

77.     In addition to $1,666,442.27, the Plaintiff gave to Mr. Lunegov additional $106,468.04 that Mr. Lunegov was supposed to deposit into the Alfa Pro's business account.

78.     At some time prior to July 31, 2019, the Plaintiff made two cash payments to Mr. Lunegov, one for $35,992.19 and the second for $70,445.85. However, Mr. Lunegov and the Plaintiff agreed that these amounts were accepted by Mr. Lunegov as of July 31, 2019 and that Mr. Lunegov will deposit them into the Alfa Pro business account.. (Ex. 33)

79.     These two amounts were not so deposited into to the Alfa Pro's business account and, without the Plaintiff's permission, were misappropriated by Mr. Lunegov for his personal use.

**MR. LUNEGOV AND RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC (RAD)**

80.     On December 4, 2017, Mr. Lunegov organized RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC (RAD) with the principal place of business 11525 ANDY DR. RIVERVIEW, FL. US 33569.

81.     RAD was organized for ALL LEGAL PURPOSES. (Ex. 34).

82.     As of the date of this action RAD owned the following properties:

*Prokopev v. Lunegov et al*

1. 301 Bassedena Cir N, Lakeland, FL 33805 Polk County, acquired on January 28 2022 for $125,500.00, (Ex. 35).

2. 111 Palmetto Lane W, Polk City, FL 33868 Polk County, acquired on October 2, 2020 from  Alfa Pro, Inc. for $60,000.00, (Ex. 36).

3. 6925 SHIMMERING DR LAKELAND FL 33813, Polk County, acquired on August 26, 2022 for $276,000.00, (Ex. 37).

4. 12712 Whisper Cir, Hudson FL Pasco County acquired on Aril 11, 2022, Inc. for $151,200, (Ex. 38).

5. 12819 Kellywood Cir, Hudson, FL 34669 Pasco County, acquired on August 26, 2022 from Alfa Pro, Inc. for $67,005.00, (Ex. 39).

6. 5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County, acquired on April 13, 2022  for $199,000.00, (Ex. 40).

7. 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County, acquired on August 5, 2022  for $869,000.00, (Ex. 41) with the mortgage to Civic Financial Services, LLC for $695,200.00, executed on the same day, (Ex. 42).

83. Mr. Lunegov either directly or vicariously through RAD acquired the above-listed properties partially or wholly using the Plaintiff's funds and without paying the Plaintiff an economic benefit from any of these properties.

84. Mr. Lunegov  used the corporate entity of RAD for his personal benefit so as to blur the distinction between corporate and his personal affairs. Mr. Lunegov used the corporate entity  of RAD to defraud the Plaintiff or injure the Plaintiff's financial interest by purchasing the real estate on Plaintiff's funds and then channeling this real estate into RAD to attempt to put this real estate outside of the Plaintiff's reach.

*Prokopev v. Lunegov et al*

85.     The fraudulent or improper use of the corporate form caused injury to the Plaintiff.

### RUSLAN CHERNYSHOV'S, R&B ONE CORPORATION'S AND R & B ONE AUTO SALES INC.'S WRONGFUL ACTIONS. MR. CHERNYSHOV'S DEALINGS WITH MR. LUNEGOV

86.     On or about "February 1, 2020 Renew October 26, 2019" [sic] RUSLAN CHERNYSHOV, individually as a Guarantor and as the President of R&B ONE CORPORATION and R & B ONE AUTO SALES INC executed and delivered a Promissory Note in the original principal amount of $200,000.00 to Alfa Pro. (Ex. 18)

87.     By the terms of the Note, Mr. Lunegov, using the corporate entity of Alfa Pro, loaned Mr. CHERNYSHOV $200,000 of the Plaintiff's money "shall bear no interest if the principal sum is paid prior to February 1, 2020. After February, 2020, Maker shall pay to the order of Payee a 2% monthly interest on the unpaid balance or $1000.00 (One thousand US Dollars) weekly whichever is greater." (Ex. 18)

88.     The Note was secured by "Personal Property and Property and equipment of the R&B One Corp auto body shop, and R&B One Auto Sales, located (1326 West Miller Ave, Orlando, FL 32805 and 1333 18th Street, Orlando, FL 32805" (Ex. 18)

89.     Mr. Lunegov did deliver $200,000 of the Plaintiff's money to Mr. CHERNYSHOV.

90.     Only 15,000.00 of the $200,000 was repaid by Mr. CHERNYSHOV to the Plaintiff.

91.     The Note mistakenly has Mr. Lunegov as the "Borrower" where the borrower is Mr. Chernyshov. This mistake may not be unintentional, but in any event needs to be corrected. (Ex. 18)

92.     As of the time of the filing of this action, $185,000 due to the Plaintiff by Mr. CHERNYSHOV remain outstanding and keep accruing the interest as stated in the Promissory Note.

*Prokopev v. Lunegov et al*

93. Furthermore, Mr. Lunegov, through Alfa Pro and Mr. CHERNYSHOV through R&B ONE through R&B ONE and R & B ONE AUTO had business dealings involving the sale and repairs of the cars.

94. These dealing directly affect the amount of funds due to the Plaintiff by Mr. Lunegov as they tend to either increase or decrease Alfa Pro's profits and have a direct impact on the safety of the Plaintiff's investment as Mr. Chernyshov by and through Mr. Lunegov could have misappropriated the Plaintiff's funds.

95. Mr. Chernyshov just like Mr. Lunegov failed to provide to the Plaintiff any accounting documents showing or supporting the amount Alfa Pro paid R&B ONE and R & B ONE AUTO for the sale and repairs of the cars.

96. Mr. CHERNYSHOV used the corporate entities of R&B ONE and R & B ONE AUTO for his personal benefit so as to blur the distinction between corporate and his personal affairs. Mr. Lunegov used the corporate entity of R&B ONE and R & B ONE AUTO to obtain the Plaintiff's money under a guise of a corporate loan whereas the Plaintiff's funds were used by Mr. CHERNYSHOV for his personal benefit and gain.

97. The fraudulent or improper use of the corporate form by Mr. CHERNYSHOV caused injury to the Plaintiff.

## **MR. MIHAILOV'S WRONGFUL ACTIONS**

### **Mr. Mihailov's Relevant Background**

98. Mr. Mihailov, is a fluent English speaker who holds himself out "*as Lawyer of the Krasnodar Chamber of the Krasnodar Territory of the Russian Federation, international lawyer of the state of California, USA (registry number No. 23/2896 in*

*Prokopev v. Lunegov et al*

*the Ministry of Justice of the Russian Federation, license No. 1129 in the Bar Chamber of California (California State Bar))*." (Ex. 3 & 4)

99.    Time period material to this action for Mr. Mihailov is from July 2022 to February 2023

100.   At the time material to this action Mr. Mihailov maintained a website with the URL of www.usalwr.com. (Ex. 15)

101.   The references to Mr. Mihailov's website or webpage in this Complaint refer to his website with the URL of www.usalwr.com.

102.   At the time material to this action, the homepage of Mr. Mihailov's  website alleged the following in the Russian language which also offered an English version by clicking on an arrow to the right of the Russian flag:



*Prokopev v. Lunegov et al*



103.    Although Mr. Mihailov  website provides 4905 Indian Wood rd#116, Culver City, CA

90230 as his business address:



at all times material to this action, Mr. Mihailov  conducted business from 3530

Mystic Pointe dr. Apt.608 Aventura, FL, 33180 or some other Florida address.

104.    At the time material to this action, the homepage of Mr. Mihailov's  website provided

the following chronology of Mr. Mihailov's  legal experience:

*Prokopev v. Lunegov et al*



With the English version stating the following:



105.    The Russian version of Mr. Mihailov's  alleged legal experience from 2016 states: "**с 2016** Государственная Адвокатура Калифорнии, юридический консультант по праву России" or "the State Attorney or California, Legal Consultant on the Russian Law".

106.    Whereas the English version of Mr. Mihailov's  alleged legal experience from 2016 states: "The State Bar of California, Registered Foreign Legal Consultant at the Law of Russia".

107.    The English version of Mr. Mihailov's  webpage also asserts that since 2016 Mr. Mihailov  was "California [sic] Secretary of State". [1]

---

[1] Alex. (Alejandro) Padilla served as the 30th secretary of state of California from 2015 to 2021.

*Prokopev v. Lunegov et al*

108. It should be noted that at all times material to this action, Russian was the default language of Mr. Mihailov's webpage.

109. While Mr. Mihailov holds himself out to the world as "You Lawyer in America", he is not a member and has never been a member of the Florida Bar. (Ex. 16)

110. He is not a licensed attorney in California. The California Bar license No. 1129 Mr. Mihailov is claiming belongs to a "deceased licensee." (Ex. 17).

111. Furthermore, Mr. Mihailov has never served as a State Attorney for any California's county or a subdivision or the United States Attorney or an Assistant Unites States Attorney for the Central, Eastern, Northern or Southern Districts of California.

112. The screenshots in paragraphs 94 - 97 of this Complaint reflect Mr. Mihailov's website as it existed at all times material to this action.

### Mr. Mihailov's Actions

113. In July 2022 the Plaintiff was beginning to understand that Mr. Lunegov simply conned him into giving them all this money and that he need help to recover his funds from Mr. Lunegov.

114. He went on the Internet searching for an attorney to help him with this recovery.

115. Sometime in July 2022, the Plaintiff came upon Mr. Mikhaylov's website at https://www.usalwr.com/ which states on its homepage "YOUR ATTORNEY IN THE UNITED STATES".

116. When the Plaintiff found Mr. Mikhailov, he through that he found an answer to his problem on how to deal with Mr. Lunegov as not only that Mr. Mikhaylov was an attorney in the United States, he also spoke Russian.

*Prokopev v. Lunegov et al*

117.  After several conversations Mr. Mikhaylov represented to the Plaintiff that he will act as his agent in the process of recovering his money from Mr. Lunegov.

118.  On July 28, 2022, Mr. Mikhaylov prepared an agreement in the Russian language titled the Agency Agreement For Recovery Of a Debt From The Debtor. That agreement states that Mr. Mihailov   is a "*Lawyer of the Krasnodar Chamber of the Krasnodar Territory of the Russian Federation, international lawyer of the state of California, USA (registry number No. 23/2896 in the Ministry of Justice of the Russian Federation, license No. 1129 in the Bar Chamber of California (California State Bar))*". (Ex. 3)

119.  Based on that language the Plaintiff believed that Mr. Mikhaylov is a licensed attorney in California with the license number 1129. In fact, Mr. Mikhaylov is not licensed in California under this number.

120.  The California bar number 1129 belongs to a deceased licensee. (Ex.17)

121.  Throughout the entire period of the business relationship between the Plaintiff and Mr. Mikhaylov, Mr. Mikhaylov advised the Plaintiff on the Florida law as if he was a Florida attorney.

122.  The records of The Florida Bar reflect that Mr. Mikhaylov is not a member thereof. Further, the official membership records of The Florida Bar indicate that Victor Mikhaylov was not a member as of March 2,2023 and, has never been a member thereof. (Ex. 16)

123.  On July 28 2022, Mr. Mikhaylov convinced the Plaintiff to execute a supplemental agreement setting his compensation package at "10% (ten percent) of the funds or the value of the property actually received by the Principal during the execution of the Agreement." (Ex. 4)

*Prokopev v. Lunegov et al*

124.   Throughout the Plaintiff's entire business relationship with Mr. Mikhaylov, the Plaintiff considered him the Plaintiff's fiduciary and an attorney who was acting and will act in the Plaintiff's best interest and will never attempt to harm the Plaintiff's property or interest.

125.   From 07/25/2022 to 02/06/2023 the Plaintiff paid directly to Mr. Mikhaylov $28,450.16 supposedly in furtherance of recovering his property from Mr. Lunegov.

126.   Mr. Mikhaylov has never provided the accounting for these funds.

127.   Mr. Mikhaylov recovered from Mr. Lunegov or Alfa Pro on the Plaintiff's behalf a lot of land located at 209 E 17Th St, Apopka, FL 32703. (The Apopka Property).

128.   The Quit Claim Deed executed on 12/06/2022 states that ALFA PRO sold the Apopka lot to Mr. Mikhaylov for $39,000. (Ex. 11)

129.   The is a substantial likelihood  that this deed is partially invalid, as Mr. Mikhaylov did not pay Alfa Pro or Mr. Lunegov $39,000 for the Apopka property. Mr. Mikhaylov and Mr. Lunegov agreed on a fictitious payment so Mr. Mikhaylov can claim the repayment of these funds from the Plaintiff.

130.   At the time of filing of this action, Mr. Mikhaylov is refusing to assign the Apopka Property to the Plaintiff, notwithstanding the fact that Mr. Mikhaylov a relationship of trust with the Plaintiff.

131.   On or about February 23, 2023 Mr. Mikhaylov sold a 2017 Buick vin number LRBFXFSX8HDO87913 he recovered from Mr. Lunegov  to a buyer whose name he concealed from the Plaintiff for $15000 (this amount could be higher) and just kept all the sale proceeds. (Ex. 13).

**<u>Additional Agreements between Mr. Mikhaylov and the Plaintiff</u>**

*Prokopev v. Lunegov et al*

132.    On July 29, 2022, the Plaintiff appointed Mr. Mikhaylov as the President of Alfa Pro for the purposes of taking control of Alfa Pro and finding out what did Mr. Lunegov do with the Plaintiff's investment, what business activities did Alfa Pro undertake and how much profit it has made or loss it has generated under Mr. Lunegov's leadership and control. (Ex. 5).

133.    Mr. Lunegov was removed as the Alfa Pro Vice President in June 2022.

134.    On October 10, 2022 Mr. Mikhaylov and the Plaintiff entered into a "STOCK (SHARES) PURCHASE AGREEMENT". (Ex. 6)

135.    The gist of the October 10, 2022 Agreement was, in fact, an assignment for no consideration and not the sale of 100% of the Alfa Pro's shares by the Plaintiff to Mr. Mikhaylov. Mr. Mikhaylov convinced the Plaintiff that the transfer of the Alfa Pro's shares in necessary for him to recover the fund's misappropriated by Mr. Lunegov.

136.    This assertion is a total nonsense, since Mr. Mikhaylov, as the Plaintiff's agent, could have recovered the funds and property from Mr. Lunegov without the ownership of any shares of Alfa Pro.

137.    The assignment of shares is just another example of Mr. Mikhaylov's undue influence over the Plaintiff.

138.    On October 10, 2022 Mr. Mikhaylov entered yet into another Agreement with the Plaintiff [2] titled "Agreement to the share purchase agreement dated October 10, 2022[.] Miami, Florida November 8, 2022". (Ex. 7).

139.    The gist of that agreement is that Party 1 (Mr. Mikhaylov) accepts from Party 2 (the Plaintiff) all shares of Alfa Pro in an effort to recover and sell the Alfa Pro's property

---

[2] All the agreements between the Plaintiff and Mr. Mikhaylov were drafted by Mr. Mikhaylov

*Prokopev v. Lunegov et al*

for the "10% of the funds received as a result of repayment of debt under investment

agreements with Company."

140.    In the October 10, 2022 agreement, Mr. Mikhaylov convinced the  Plaintiff to agree

that:

> The value of VRG property minus the value of VRG debt under loan agreements
> for the purchase of this property, excluding prepayment penalties under these
> agreements. The value of VRG property agreed by the Parties:
>
> 114 New Providence Promenade, Davenport FL - $280,000.00
> 114 Watling Way, Davenport, FL 33837 - $275,000.00
> 108 Andros Ave, Davenport, FL 33897 - $285,000.00
> 101 Paradise Parade, Davenport, FL 33897 - $280,000.00
> 910 Gran Bahama Blvd, Davenport, FL 33897 - $305,000.00
>
> Total for $1,425,000.00.
>
> VRG's provisional loan debt is $874,200

## Alfa Pro – VRG Shares Swap; Mr. Mikhaylov's dealing with Mr. Lunegov's to the Plaintiff's detriment

141.    It appears that after becoming the Alfa Pro's President, Mr. Mikhaylov  reached out to

Mr. Lunegov for the purposes of gaining  transparency into Mr. Lunegov's

management of Alfa Pro and to recover the Plaintiff's funds or property.

142.    On or about Apr 28, 2022 Mr. Lunegov was the President of a Florida entity (Ex. 29),

VACATION RENTALS GROUP INC. (VRG) which held the titles to the following

real estate properties all of which are located in Polk County, FL:

a.    114 Watling Way Davenport FL 33837, pay off mortgage amount as of October 31,
2022 - $ 165,483.33

*Prokopev v. Lunegov et al*

b.   108 Andros Ave Davenport FL 33897, pay off mortgage amount as of October 31, 2022 - $ 165,483.33

c.   114 New Providence Davenport FL 33897, pay off mortgage amount as of October 31, 2022 - $ 162,897.66

d.   101 Paradise Parade Davenport FL 33897, pay off mortgage amount as of October 31, 2022 - $ 179,426.47

e.   910 Gran Bahama Blv Davenport FL, pay off mortgage amount as of October 31, 2022 - $ 208,538.17

(Composite Ex. 30)

143.   All the above-listed properties are mortgaged with Mr. Lunegov as the mortgagor. (Composite Ex. 30)

144.   On December 7, 2022 Mr. Mikhaylov and Mr. Lunegov entered into two STOCK (SHARES) PURCHASE AGREEMENT[s] whereby Mr. Mikhaylov acquired 100% of VRG and Mr. Lunegov acquired 100% shares of Alfa Pro. (Ex. 8)

145.   On December 12, 2022, and after the December 7, 2022 was executed, Mr. Mikhaylov and Mr. Lunegov entered into a "Add [sic] to Supplementary Agreement to the Vacation Rentals Group inc. shares purchase agreement". (Ex. 9).

146.   The following clauses of the December 12, 2022 agreement, to which the Plaintiff was not a party, are of particular concern to the Plaintiff:

2.3.3 Party 1 [Mr. Lunegov] undertakes to transfer to Party 2 [Mr. Mikhaylov] its TWG [sic] shares, equivalent to the amount redeemed by Party 2 of the above loan, at the rate of one share per $1.425 of the loan repaid (100% share is 1000000). Party 2 has the right to preferred purchases of shares at a this [sic] fixed price only until the loan is repaid in full.

2.4 "Party-1" will use 61% of shares as a pledge, by March 1, 2023 or by the moment when listed properties loans are paid off or transferred to "Party-2" as a new loan guarantor and co-owner.

*Prokopev v. Lunegov et al*

147.  The clause 2.3.3 of the December 12, 2022 puts the 100% of VRG's share at 1000000 (one million) shares and assigns a value of $1.425 to each share, which "accidently" puts the VRG valuation at $1,425,000.00 or the exact amount Mr. Mikhaylov convinced the Plaintiff VRG was worth on November 8, 2022.

148.  The VRG's apartments (and its sole known asset) are not even nearly worth that figure. When all the mortgages are paid off and real estate brokers' commissions are withheld, the Plaintiff is going to net somewhere around $200,000 for all apartments.

149.  Once, Mr. Mikhaylov became the VRG's President, the Plaintiff began paying the mortgage payments and the association fees for these apartments.

150.  Mr. Mikhaylov artificially inflated the level to of his recovery to $1,425,000.00 in his effort to extort 10% of the inflated VRG's value form the Plaintiff.

151.  Furthermore, Mr. Mikhaylov attempted to secure Mr. Lunegov's 61 % interest in VRG or the apartments' sale proceeds "by March 1, 2023 or by the moment when listed properties loans are paid off."

152.  Mr. Mikhaylov acquiescence to this language five days after the initial agreement was already executed is unjustified and inexplicable if Mr. Mikhaylov was acting in a forthright and an honest manner towards the Plaintiff but is perfectly logical if Mr. Mikhaylov was pursuing his and Mr. Lunegov's untoward interests to the Plaintiff's detriment.

153.  Mr. Mikhaylov, who was the Plaintiff's agent and "attorney" became a double agent where he advanced Mr. Lunegov's and his own interests at the Plaintiff's expense and to the Plaintiff's detriment.

*Prokopev v. Lunegov et al*

154.    Although on February 21, 2023, Mr. Mikhaylov signed a letter of resignation as the VRG's president and assigned the VRG's "1000000 shares of no par value common stock" to the Plaintiff, (Ex. 31), he refused to complete the paperwork necessary for the Florida Department of State to officially register Mr. Mikhailov's resignation as the VRG's president and the Plaintiff's becoming the VRG's president (Ex. 32) unless the Plaintiff executes an "Agreement to the share purchase agreement dated February 21, 2023". (Ex. 10).

155.    That proposed agreement, which the Plaintiff did not accept, shows Mr. Mikhaylov's true nature as it relates to his treatment of the Plaintiff:

1. The shares were transferred by "Party-2" [the Plaintiff] to "Party-1" [Mr. Mikhaylov] on account of settlements on the shares of Alfa pro inc. received from "Party-1". under the share purchase agreement dated October 10, 2022 and agreed with it dated November 8, 2022.

2. "Party -1" is familiar with the contract for the purchase of shares of VRG Inc. dated December 7, 2022, the agreements to it dated December 12, 2022 and assumes full responsibility for their execution.

156.    Clause 1 of the of the Proposed Agreement refers to a settlement that has never taken place between the Plaintiff and Mr. Mikhaylov where Mr. Mikhaylov is unscrupulously advancing his own interest on the Plaintiff's expense and clause 2 is attempting to trick the Plaintiff into accepting Mr. Lunegov's 61% interest either in the VRG's shares or in the apartments' sale proceeds.

157.    Clearly, as the Plaintiff agent and the purported "attorney", Mr. Mikhaylov who was supposed to be acting the best interest of his Client violated his duty of loyalty many times over. This Proposed Agreement is just another proof of these blatant violations.

158.    The Plaintiff allowed Mr. Mikhaylov to become in charge of his property and affairs since Mr. Mikhaylov convinced the Plaintiff that he will act on the Plaintiff's behalf as

*Prokopev v. Lunegov et al*

my fiduciary. The Plaintiff completely trusted Mr. Mikhaylov, and Mr. Mikhaylov violated that trust to the Plaintiff's detriment and his personal enrichment.

159.    Mr. Mikhaylov cavorted, conspired or otherwise assisted Mr. Lunegov against his own client and a beneficiary.

160.    Both Mr. Lunegov and Mr. Mikhaylov shamelessly used the Plaintiff's trusting nature to take a complete advantage of him, both mentally and financially for their personal and gain and benefit.

## CLAIMS FOR RELIEF

## COUNT 1 - COMMON LAW FRAUD
### (Mr. Lunegov)

161.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above.

162.    The false and fraudulent representations of material fact specifically include the promises Mr. Lunegov made to the Plaintiff that: the Plaintiff can trust him, that he guarantees the safety of the Plaintiff's investments and the earning of at least 24% per annum.

163.    Mr. Lunegov made the above-described misrepresentations and engaged in such conduct to induce the Plaintiff into relying on the misrepresentations by giving Mr. Lunegov well over one million dollars, by trusting him that his investment is safe and that his  earning of at least from Mr. Lunegov's business activities will be 24% per annum.

164.    As a result of its reliance on these misrepresentations, the Plaintiff has incurred damages of  in a neighborhood of $1,666,442.27.

*Prokopev v. Lunegov et al*

165.   The willful, reckless, and/or wanton conduct of Mr. Lunegov entitles the Plaintiff to punitive damages.

WHEREFORE, The Plaintiff demands judgment against Mr. Lunegov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

## COUNT 2 - UNJUST ENRICHMENT
**(Mr. Lunegov, Tatiana Lunegova and Alfa Pro)**

166.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

167.   The Plaintiff has conferred a benefit on Mr. Lunegov, Alfa Pro and Tatiana Lunegova in the form of an amount in a neighborhood of $1,666,442.27 and  Mr. Lunegov, Alfa Pro and Tatiana Lunegova had the knowledge thereof and which Mr. Lunegov, Alfa Pro and Tatiana Lunegova voluntarily accepted.

168.   Mr. Lunegov and Alfa Pro, and Tatiana Lunegova by the virtue of co-habiting with Mr. Lunegov as his spouse, have been unjustly enriched by an amount in a neighborhood of $1,666,442.27.

169.   Furthermore, Mr. Lunegov has been unjustly enriched by two cash payments from the Plaintiff, one for $35,992.19 and the second for $70,445.85 of which he had knowledge and which he voluntarily accepted.

170.   Under such circumstances, it would be inequitable for Mr. Lunegov, Alfa Pro, and Tatiana Lunegova to retain these funds without paying to the Plaintiff the value thereof.

WHEREFORE, The Plaintiff demands judgment against Mr. Lunegov, Tatiana Lunegova and Alfa Pro for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

*Prokopev v. Lunegov et al*

### <u>COUNT 3 – EQUITABLE LIEN ON THE 1000 JEATER BEND PROPERTY</u>
**(Mr. Lunegov)**

171.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

172.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff as amount in the neighborhood of $1,666,442.27.

173.     Some of that amount was used purchase Mr. Lunegov's residential property located at 1000 JEATER BEND DR, KISSIMMEE, FL for $590,000.00.

174.    Mr. Lunegov has not repaid these money to the Plaintiff.

175.    Mr. Lunegov was unjustly enriched because the Plaintiff  partially paid off a debt that otherwise would have to be paid on the Property.

176.    The Court should impose an equitable lien on 1000 JEATER BEND DR, KISSIMMEE, FL. (The 1000 Jeater Bend Property)

177.    The Plaintiff has no adequate remedy at law for the reasons including, but not limited to, Mr. Lunegov's insolvency as evidenced by a judgment of foreclosure entered against him on March 7, 2023 in the Manatee County, FL case number 412022CA004655CAAXMA. (Ex. 27). His further insolvency by hiding or unloading of assets in an anticipation of this action may be revealed further through discovery conducted in this case.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment establishing an equitable lien on The 1000 Jeater Bend Property for the Plaintiff's benefit, awarding him attorney's fees, and for such other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 3 –FORECLOSURE OF AN EQUITABLE LIEN - THE 1000 JEATER BEND PROPERTY
### (Mr. Lunegov, Tatiana Lunegova and Rocket Mortgage, LLC)

178.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

179.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

180.    Mr. Lunegov has not repaid these monies to the Plaintiff.

181.    An equitable lien on 1000 JEATER BEND DR, KISSIMMEE, FL (The 1000 Jeater Bend Property) resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

182.    Tatiana Lunegova, as Mr. Lunegov's spouse and Rocket Mortgage, LLC as the mortgagee of The 1000 Jeater Bend Property claims or may claim some right, title, or interest in or to The 1000 Jeater Bend Property, each of which claim is junior and inferior to Plaintiff's claim.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on the 1000 Jeater Bend Property as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against The 1000 Jeater Bend Property, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Osceola County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these

*Prokopev v. Lunegov et al*

proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

## COUNT 4 – EQUITABLE ACCOUNTING
### (Mr. Lunegov and Alfa Pro)

183.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

184.    The Plaintiff, Mr. Lunegov and Alfa Pro shared business relationship in the course of which the Plaintiff transferred  by wire or otherwise gave Mr. Lunegov and Alfa Pro large sums of money.

185.    The transactions between the Plaintiff, Mr. Lunegov and Alfa Pro involve extensive or complicated accounts and  it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.

186.    Without accounting, the Plaintiff is unable to determine what exactly  Mr. Lunegov and Alfa Pro did with his investment, the amount of income or loss Alfa Pro generated for years 2019, 2020, 2021  and 2022 and the income generated by Mr. Lunegov's business endeavors (not just from Alfa Pro) for years 2019, 2020, 2021  and 2022 from which the return of  at least 24% per annum can be computed.

WHEREFORE, the Plaintiff is asking this enter an order permitting accounting of the transactions between the Plaintiff, Mr. Lunegov and Alfa Pro and for such further relief that this Honorable Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 5 – BREACH OF THE JOINT VENTURE AND MANAGEMENT AGREEMENT DATED JANUARY 31, 2020
### (Mr. Lunegov)

187.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above.

188.   The Plaintiff entered into the Joint Venture and Management Agreement dated January 31, 2020.

189.   In that Agreement, Mr. Lunegov accepted the Plaintiff's trust in running and managing Alfa Pro (Ex. 2, at pg. 1), undertook a duty to act "solely for the best interests of […] Oleg S. Prokopev" and "guarantee[ed] the safety of Oleg S. Prokopev's investments and the earning of at least 24% per annum". (Ex. 2, at pg. 3 )

190.   The Plaintiff performed his of the Agreement by: 1) wiring or otherwise giving Mr. Lunegov and Alfa Pro large sums of money 2) accepting Mr. Lunegov's assurances that the Plaintiff can trust him with his money and with the way Mr. Lunegov runs Alfa Pro 3) accepting Mr. Lunegov's guarantee that his investment is safe 4) that the earning on his investment from Mr. Lunegov's business endeavors (not just from Alfa Pro) will be "at least 24% per annum" and that 5) Mr. Lunegov will act in the best interest of the Plaintiff while conducting business and keeping the Plaintiff's investment safe.

191.   Mr. Lunegov materially breached this agreement by: 1) misappropriating the Plaintiff's investment 2) violating the Plaintiff's trust by misappropriating the Plaintiff's investment 3) violating the guarantee made to the Plaintiff about the safety of the Plaintiff's investments 4) violating his promise to act in the Plaintiff's best interests when engaging in the management of Alfa Pro and other business endeavors. 5) not returning the Plaintiff's investment when the Plaintiff requested them back 6)

*Prokopev v. Lunegov et al*

not providing the accounting and financial materials regarding the application of the Plaintiff's investment and the income or loss generated by Alfa Pro or other business ventures 7) not paying the Plaintiff the earning on his investment of "at least 24% per annum" 8) giving $200,000 to Mr. Chernyshov using a defective promissory note without a date certain for the repayment of the principal or a payment schedule attached to it, which indicates that the borrower is Mr. Lunegov and not Mr. Chernyshov and failing to collect the amount due under it, is not acting in the best interest of the Plaintiff. 9) by colluding or conspiring with Mr. Mihailov regarding divesting the Plaintiff of his interest in VRG and securing Mr. Lunegov's and Mr. Mihailov's interest in VRG at the Plaintiff's expense and 10) by acquiring the properties described in paragraph 82 of this Complaint without paying the Plaintiff an economic benefit from them.

192.   As a result of Mr. Lunegov's  material breach of the Agreement, the Plaintiff was damaged.

WHEREFORE, the Plaintiff moves this Honorable Court for Damages, Prejudgment interest, Post judgment interest, Attorney's fees and court costs and such further relief that this Honorable Court deems just and proper.

### COUNT 6 – BREACH OF FIDUCIARY DUTIES TO THE PLAINTIFF
### (Mr. Lunegov)

193.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

194.   The Plaintiff entered into the Joint Venture and Management Agreement dated  January 31, 2020.

*Prokopev v. Lunegov et al*

195. In that Agreement, Mr. Lunegov and the Plaintiff acknowledged that the Plaintiff "trusts [Mr. Lunegov] wholeheartedly" and that the Plaintiff relies on Mr. Lunegov's "assurances" (Ex. 2, at pg. 1), that Mr. Lunegov will act in the Plaintiff's "best interests" (Ex. 2, at pg. 3 ) in keeping the Plaintiff's investment safe, running Alfa Pro and other business ventures.

196. By the virtue of Mr. Lunegov accepting the Plaintiff's trust, the Plaintiff's reliance on Mr. Lunegov's "assurances" and Mr. Lunegov's promise to act in the Plaintiff's "best interests", Mr. Lunegov developed a duty of loyalty and care towards the Plaintiff.

197. Mr. Lunegov breached the three basic fiduciary duties — duty of loyalty, duty of care and duty of good faith to the Plaintiff by: 1) misappropriating the Plaintiff's investment 2) violating the Plaintiff's trust by misappropriating the Plaintiff's investment 3) violating the guarantee made to the Plaintiff about the safety of the Plaintiff's investments 4) violating his promise to act in the Plaintiff's best interests when engaging in the management of Alfa Pro and other business endeavors. 5) not returning the Plaintiff's investment when the Plaintiff requested them back 6) not providing the accounting and financial materials regarding the application of the Plaintiff's investment and the income or loss generated by Alfa Pro or other business ventures 7) not paying the Plaintiff the earning on his investment of "at least 24% per annum" 8) giving $200,000 to Mr. Chernyshov using a defective promissory note without a date certain  for the repayment of the principal or a payment schedule attached to it, which indicates that the borrower is Mr. Lunegov and not Mr. Chernyshov and by failing to collect the amount due under  the note 9) by colluding or conspiring with Mr. Mihailov regarding divesting the Plaintiff of his interest in VRG and securing Mr. Lunegov's

*Prokopev v. Lunegov et al*

and Mr. Mihailov's interest in VRG at the Plaintiff's expense 10) by acquiring the properties described in paragraph 82 of this Complaint without paying the Plaintiff an economic benefit from them.

198.    As a result of Mr. Lunegov's breach of his fiduciary duties of loyalty, care and good faith the Plaintiff was damaged.

199.    The willful, reckless, and/or wanton conduct of Mr. Lunegov entitles the Plaintiff to punitive damages.

WHEREFORE, The Plaintiff demands judgment against Mr. Lunegov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

### COUNT 7 – WASTE AND MISMANAGEMENT OF THE PLAINTIFF'S ASSETS
**(Mr. Lunegov)**

200.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above.

201.    The Plaintiff entered into the Joint Venture and Management Agreement dated January 31, 2020.

202.    In that Agreement, Mr. Lunegov and the Plaintiff acknowledged that the Plaintiff "trusts [Mr. Lunegov] wholeheartedly" and that the Plaintiff relies on Mr. Lunegov's "assurances" (Ex. 2, at pg. 1), that Mr. Lunegov will act in the Plaintiff's "best interests" (Ex. 2, at pg. 3 ) in keeping the Plaintiff's investment safe, running Alfa Pro and other business ventures.

203.    By the virtue of Mr. Lunegov accepting the Plaintiff's trust, the Plaintiff's reliance on Mr. Lunegov's "assurances" and Mr. Lunegov's promise to act in the Plaintiff's "best

*Prokopev v. Lunegov et al*

interests", Mr. Lunegov had a duty to preserve, manage or otherwise look after the Plaintiff's monetary and non-monetary assets.

204.  Mr. Lunegov breached the duty of preserving, managing or otherwise looking after the Plaintiff's monetary and non-monetary assets by: 1) misappropriating the Plaintiff's investment  2) giving $200,000 to Mr. Chernyshov using a defective promissory note without a date certain  for the repayment of the principal or a payment schedule attached to it, which indicates that the borrower is Mr. Lunegov and not Mr. Chernyshov and failing to collect the amount due under it 3) by not keeping accounting records or keeping them in a way that provide no useful information to the Plaintiff about was happened to his investment or how much money Mr. Lunegov made from Alfa Pro or his other business ventures 4) allowing the property located at 904 Cypress Wood Ln, Sarasota FL (the Cypress Wood Property) to fall in to a state of disrepair 5) failing to pay the mortgage he gave to KIAVI FUNDING, INC.  6) failing to properly defend the foreclosure action brought by KIAVI FUNDING, INC. against him and Alfa Pro in a Manatee County Circuit Court case number 412022CA004655CAAXMA seeking to foreclosure in the Cypress Wood Property by filing no opposition  to Plaintiff's Motion for Summary Judgment of Foreclosure and Request for Attorneys' Fees on Counts I and II or by not even attending a hearing on KIAVI FUNDING Summary Judgment of Foreclosure and Request for Attorneys' Fees on March 1, 2023

205.  Mr. Loginov's conduct in committing waste of the Plaintiff's assets was intentional, willful, and malicious with full knowledge that it would result in a substantial damage to the Plaintiff's assets and interest entitles the Plaintiff to punitive damages.

*Prokopev v. Lunegov et al*

WHEREFORE, The Plaintiff demands judgment against Mr. Lunegov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

<u>**COUNT 8 -  CONSTRUCTIVE TRUST**</u>
**(Mr. Lunegov and RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC "RAD")**

206.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above.

207.    Mr. Lunegov made an expressed or implied promise to act in the best interest of the Plaintiff, to keep the Plaintiff's investment safe and that the Plaintiff's earning on his investment will be least 24% per annum.

208.    In reliance of these promises, the Plaintiff transferred to Alfa Prove, but really to Mr. Lunegov, an amount in a neighborhood of $1,666,442.27.

209.    On August 13, 2021, Mr. Lunegov used a part of the Plaintiff's investment funds to acquire a residential property located at 1000 JEATER BEND DR, KISSIMMEE, FL (The 1000 Jeater Bend Property) for $590,000.00 and the properties described in the paragraph 82 of this Complaint.

210.    On or around July 25, 2019 Alfa Pro through  Mr. Lunegov, using the Plaintiff's funds, purchased a properly located at 7723 Indian Ridge Tri N, Kissimmee, FL 34747 (the Indian Ridge property) for $197,150.00 (Ex. 25) and on March 20, 2020 Alfa Pro, through Mr. Lunegov sold the Indian Ridge property for $255,000.00, (Ex. 23) and never shared any of the sale proceeds with the Plaintiff.

211.    On June 7, 2023 the property located at 904 Cypress Wood Ln, Sarasota FL (the Cypress Wood Property) is going to be sold at the foreclosure sale pursuant to the Final

*Prokopev v. Lunegov et al*

Judgment entered in in the Manatee County Circuit Court under case number 412022CA004655CAAXMA.

212. Since the Cypress Wood Property was acquired using the Plaintiff's funds, the equity left after KIAVI FUNDING recovers its judgment amount, if any, belongs to the Plaintiff.

213. Mr. Lunegov improperly using the composite entity of RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC acquired the following real estate using the Plaintiff's funds:

1. 301 Bassedena Cir N, Lakeland, FL 33805 Polk County, acquired on January 28 2022 for $125,500.00, (Ex. 35).

2. 111 Palmetto Lane W, Polk City, FL 33868 Polk County, acquired on October 2, 2020 from Alfa Pro, Inc. for $60,000.00, (Ex. 36).

3. 6925 SHIMMERING DR LAKELAND FL 33813, Polk County, acquired on August 26, 2022 for $276,000.00, (Ex. 37).

4. 12712 Whisper Cir, Hudson FL Pasco County acquired on Aril 11, 2022, Inc. for $151,200, (Ex. 38).

5. 12819 Kellywood Cir, Hudson, FL 34669 Pasco County, acquired on August 26, 2022 from Alfa Pro, Inc. for $67,005.00, (Ex. 39).

6. 5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County, acquired on April 13, 2022 for $199,000.00, (Ex. 40).

7. 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County, acquired on August 5, 2022 for $869,000.00, (Ex. 41) with the mortgage to Civic Financial Services, LLC for $695,200.00, executed on the same day, (Ex. 42).

*Prokopev v. Lunegov et al*

214.    By the virtue of Mr. Lunegov accepting the Plaintiff's trust, the Plaintiff's reliance on Mr. Lunegov's "assurances" and Mr. Lunegov's promise to act in the Plaintiff's "best interests", Mr. Lunegov developed a duty of loyalty, care and good faith towards the Plaintiff.

215.    Instead of carrying out a duty of loyalty, care and good faith towards the Plaintiff, Mr. Lunegov unjustly enriched himself on the Plaintiff's expense.

216.    Equity requires the imposition of a constructive trust in this situation.

   WHEREFORE the Plaintiff respectfully requests that this Court enter an order that 1) Mr. Lunegov holds whatever remained of the Plaintiff's investment in constructive trust for the Plaintiff 2) Mr. Lunegov holds any amount of income generated from Alfa Pro or his other business ventures in constructive trust for the Plaintiff 3) The 1000 Jeater Bend Property and the properties described in the paragraphs 82 and 213 of this Complaint, be sold and Mr. Lunegov and/or RAD hold the sale proceeds thereof in constructive trusts for the Plaintiff 4) Mr. Lunegov holds the sale proceeds from the Indian Ridge Property in constructive trusts for the Plaintiff 5) Mr. Lunegov holds the sale proceeds from the Cypress Wood Property equity left after KIAVI FUNDING recovers its judgment amount in constructive trusts for the Plaintiff 6) Mr. Lunegov pays these funds to the Plaintiff  7) award the Plaintiff attorney's fees and costs and other and further relief as the court deems just and proper.

## <u>COUNT 9 -  CIVIL THEFT</u>
### (Mr. Lunegov)

217.    The Complaint will be amended to include the Civil Theft count against Mr. Lunegov once the notice requirement of §772.11(1) Fla. Stat is satisfied.

*Prokopev v. Lunegov et al*

## COUNT 10 – BREACH OF  THE  PROMISSORY NOTE DATED FEBRUARY 1, 2020 ATTACHED AS EXHIBIT 18. CORRECTION OF THE SAME NOTE.
**(Mr. Chernyshov; R&B One Corporation,  R & B One Auto Sales Inc.)**

218.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 77 through 83 as they relate to this count.

219.   This is an action to enforce the Promissory Note which was executed and delivered by Mr. Chernyshov as the borrower to Mr. Lunegov as the lender for the original principal amount of $200,000.00.

220.   Under 673.3011(2), Florida Statutes the Plaintiff is either a nonholder in possession who has the rights of the holder, or a person not in possession who nevertheless is entitled to enforce the note since it was the Plaintiff's funds that were loaned by Mr. Lunegov, who owed the Plaintiff fiduciary duties described above, to Mr. Chernyshov. In other words, Mr. Lunegov stood in the Plaintiff's shoes when he loaned these funds to Mr. Chernyshov.

221.   In the alternative the Plaintiff has standing to recover on the Note since he was an intended beneficiary under that Note where the entire principal and at least part of the interest under the Note would inure to the Plaintiff.

222.   The balance of the Note, $185,000,00 nor any of its interest has been repaid by Mr. Chernyshov to the Plaintiff.

223.   By virtue of Mr. Chernyshov's failure to make payments when due, Plaintiff has been forced to retain the services of the undersigned counsel, and has agreed to pay said attorneys a reasonable fee for their services.

*Prokopev v. Lunegov et al*

WHEREFORE, the Plaintiff moves this Honorable Court for Damages in the amount of the balance of the Note and any computed interest thereon, an order correcting the Note by property designating Mr. Chernyshov as the borrower, prejudgment interest, post judgment interest, attorney's fees and court costs and such further relief that this Honorable Court deems just and proper.

## COUNT 11 - UNJUST ENRICHMENT
### (Mr. Chernyshov)

224.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 77 through 83 as they relate to this count.

225.    The Plaintiff, through Mr. Lunegov, conferred $185,000.00 on Mr. Chernyshov and Mr. Chernyshov had the knowledge thereof.

226.    Mr. Chernyshov voluntarily accepted and retained the Plaintiff's $185,000.00

227.    Mr. Chernyshov has been unjustly enriched by $185,000.00 of the Plaintiff's money.

228.    Under such circumstances, it would be inequitable for Mr. Chernyshov to retain these funds without paying to the Plaintiff the value thereof.

WHEREFORE, The Plaintiff demands judgment against Mr. Chernyshov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

*Prokopev v. Lunegov et al*

## COUNT 12 - DECLARATORY RELIEF UNDER 28 U.S.C. § 2201 REGARDING THE PROMISSORY NOTE DATED FEBRUARY 1, 2020 ATTACHED AS EXHIBIT 18
### (Mr. Lunegov and Mr. Chernyshov)

229.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 77 through 83 as they relate to this count.

230.    Pursuant to 28 U.S.C. § 2201(a) "[i]n a case of actual controversy within its jurisdiction, […] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

231.    The relief sought is not for the purposes of obtaining a legal advice or to answer questions propounded for curiosity.

WHEREFORE  the Plaintiff  requests that this court grant the following relief:

1)  A declaration that the Plaintiff is the lender under the said Note and Mr. Chernyshov in the borrower;

2)  A declaration that the said Note is now in default and due and payable as to the principle and any interest thereon;

3)  A judgment against  Mr. Chernyshov and in favor of the Plaintiff in the amount of the Note's principle and any interest thereon;

4)  A declaration that this case is exceptional under 35 U.S.C.A. § 285 and awarding the Plaintiff  his attorneys' fees, costs, and expenses incurred against Mr. Lunegov and Mr. Chernyshov jointly and severally; and

5)  Such other and further relief as this court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 13 - COMMON LAW FRAUD
### (Mr. Mihailov)

232.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above, and specifically paragraphs 90 through 152 as they relate to this count.

233.    The false and fraudulent representations of material fact specifically include: that he is an attorney, that he is a licensed California attorney with a licensed number 1129, that he served a Legal Consultant on the Russian Law for the State Attorney of California, that he served as California's Secretary of State, that he convinced the Plaintiff that, as his agent, he will act in the Plaintiff's best interest and will not put himself in a position adverse to that of the Plaintiff.

234.    Mr. Mihailov made the above-described misrepresentations and engaged in such conduct to induce the Plaintiff into relying on the misrepresentations by accepting Mr. Mihailov as his attorney and an agent to recover the Plaintiff's property from Mr. Lunegov.

235.    As a result of its reliance on these misrepresentations, the Plaintiff has incurred damages including but not limited to 1) the Apopka Property 2) the sales proceeds from the Buick, 3) at least a part of $28,450.16 Plaintiff paid directly to Mr. Mikhaylov supposedly in furtherance of recovering his property from Mr. Lunegov, 4) by Mr. Mihailov artificially inflating the prices per VRG's share to $1.425 per share to $1,425,000.00 in his effort to extort from the Plaintiff 10% of the inflated VRG's value and by Mr. Mihailov's attempt to secure Mr. Lunegov's 61 % interest in VRG or the apartments' sale proceeds "by March 1, 2023 or by the moment when listed properties

*Prokopev v. Lunegov et al*

loans are paid off." 5) by Mr. Mihailov's refusal to complete the paperwork necessary for the Florida Department of State to officially register Mr. Mikhailov's resignation as the VRG's president and the Plaintiff's becoming the VRG's president and 6) by Mr. Mihailov colluding or conspiring with Mr. Lunegov regarding divesting the Plaintiff of his interest in VRG and securing Mr. Lunegov's and Mr. Mihailov's interest in VRG at the Plaintiff's expense.

236.    The willful, reckless, and/or wanton conduct of Mr. Mihailov entitles the Plaintiff to punitive damages.

WHEREFORE, The Plaintiff demands judgment against Mr. Mihailov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

### COUNT 14 – BREACH OF FIDUCIARY DUTIES TO THE PLAINTIFF
**(Mr. Mihailov)**

237.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 90 through 152 as they relate to this count.

238.    From the onset of their relationship, beginning in July 2022 Mr. Mihailov represented to the Plaintiff that he was the Plaintiff's attorney and the Plaintiff believed him to be such when he retained Mr. Mihailov to recover the Plaintiff's property from Mr. Lunegov.

239.    Furthermore, on July 28, 2022 Mr. Mihailov and the Plaintiff entered into an "Agency agreement for debt collection from a debtor", (Ex. 3) and the an addition thereto (Ex. 4). Both agreements designated Mr. Mihailov as  "Agent" and the Plaintiff  "Principal".

*Prokopev v. Lunegov et al*

240.   In addition to attorney-client relationship between Mr. Mihailov and the Plaintiff, Mr. Mihailov also developed an agent and the principal relationship with the Plaintiff.

241.   By the virtue of the attorney-client and the agent-principal relationships, Mr. Mihailov developed a duty of loyalty and care towards the Plaintiff.

242.   Mr. Mihailov breached the three basic fiduciary duties — duty of loyalty, duty of care and duty of good faith to the Plaintiff by:  1) taking possession of the Apopka Property and refusing assign the same to the Plaintiff 2) keeping the sales proceeds from the Buick 3) appropriating at least a part of $28,450.16 Plaintiff paid directly to Mr. Mikhaylov supposedly in furtherance of recovering his property from Mr. Lunegov 4) by Mr. Mihailov artificially inflating the prices per VRG's share to $1.425 per share to $1,425,000.00 in his effort to extort from the Plaintiff 10% of the inflated VRG's value 5) by Mr. Mihailov's refusal to complete the paperwork necessary for the Florida Department of State to officially register Mr. Mikhailov's resignation as the VRG's president and the Plaintiff's becoming the VRG's president 6) by Mr. Mihailov's attempt to secure Mr. Lunegov's 61 % interest in VRG or the apartments' sale proceeds "by March 1, 2023 or by the moment when listed properties loans are paid off." and  6) by colluding or conspiring with Mr. Lunegov regarding divesting the Plaintiff of his interest in VRG and securing Mr. Lunegov's and Mr. Mihailov's interest in VRG at the Plaintiff's expense.

243.   As a result of Mr. Mihailov's breach  of his fiduciary duties of loyalty, care and  good faith the Plaintiff was damaged.

244.   The willful, reckless, and/or wanton conduct of Mr. Mihailov entitles the Plaintiff to punitive damages.

*Prokopev v. Lunegov et al*

WHEREFORE, The Plaintiff demands judgment against Mr. Mihailov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

### COUNT 15 -  CONSTRUCTIVE TRUST
### (Mr. Mihailov)

245.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 90 through 152 as they relate to this count.

246.    Mr. Mihailov made an expressed or implied promise to the Plaintiff to act towards the Plaintiff with duties of loyalty, care and good faith as his lawyer and his agent.

247.    In reliance of these promises, the Plaintiff the Plaintiff allowed Mr. Mihailov to take title for the Apopka Property, the Buick and to become the VRG's president.

248.    Instead of carrying out a duty of loyalty, care and good faith towards the Plaintiff, Mr. Mihailov unjustly enriched himself on the Plaintiff's expense.

249.    Equity requires the imposition of a constructive trust in this situation.

WHEREFORE the Plaintiff respectfully requests that this Court enter an order that 1) Mr. Mihailov holds the Apopka Property or sale proceeds thereof in constructive trust for the Plaintiff 2) Mr. Mihailov holds sale proceeds from the Buick in constructive trust for the Plaintiff 3) Mr. Mihailov holds whatever economic benefit he derived from either being the VRG's president or any business dealing with Mr. Lunegov in constructive trusts for the Plaintiff 6) Mr. Lunegov pays these funds or transfers this property to the Plaintiff  7) award the Plaintiff attorney's fees and costs and other and further relief as the court deems just and proper.

*Prokopev v. Lunegov et al*

## <u>COUNT 16 – EQUITABLE LIEN – THE APOPKA PROPERTY</u>
### (Mr. Mihailov)

250.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 119 through 122 as they relate to this count.

251.    Mr. Mikhaylov recovered from Mr. Lunegov or Alfa Pro on the Plaintiff's behalf a lot of land located at 209 E 17Th St, Apopka, FL 32703, (The Apopka Property), which is now his by the virtue of the Quit Claim Deed executed on December 6, 2022.

252.     The Apopka Property was recovered by Mr. Mikhaylov from Mr. Lunegov and was acquired on the Plaintiff's funds.

253.    As the Plaintiff's purported attorney and agent, Mr. Mikhaylov had a duty to return the Apopka Property to the Plaintiff, but he did not.

254.    Mr. Mikhaylov was unjustly enriched because the Plaintiff  partially paid off a debt that otherwise would have to be paid on the Apopka Property.

255.    The Court should impose an equitable lien on 209 E 17Th St, Apopka, FL 32703  (The Apopka Property).

256.    The Plaintiff has no adequate remedy at law for the reasons including but not limited to the hiding or unloading of assets in an anticipation of this action may be revealed further through discovery conducted in this case.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment establishing an equitable lien on the Apopka Property for the Plaintiff's benefit, awarding him attorney's fees, and for such other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 17 –FORECLOSURE OF AN EQUITABLE LIEN -– THE APOPKA PROPERTY
### (Mr. Mihailov)

257.     The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically paragraphs 119 through 122 as they relate to this count

258.     Mr. Mikhaylov recovered from Mr. Lunegov or Alfa Pro on the Plaintiff's behalf a lot of land located at 209 E 17Th St, Apopka, FL 32703, (The Apopka Property), which is now his by the virtue of the Quit Claim Deed executed on December 6, 2022.

259.      The Apopka Property was recovered by Mr. Mikhaylov from Mr. Lunegov and was acquired on the Plaintiff's funds.

260.     As the Plaintiff's purported attorney and agent, Mr. Mikhaylov had a duty to return the Apopka Property to the Plaintiff but he did not.

261.     An equitable lien on 209 E 17Th St, Apopka, FL 32703   (The Apopka Property) resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of the value of the Apopka Property at the Plaintiff's expense .

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on the 1000 Jeater Bend Property as follows: an amount of the value of the Apopka Property, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against the Apopka Property, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Orange County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the

*Prokopev v. Lunegov et al*

cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

## COUNT 18 - DECLARATORY RELIEF UNDER 28 U.S.C. § 2201 REGARDING MR. MIHAILOV'S RESIGNATION AS VRG'S PRESIDENT AND MR. MIHAILOV'S AND MR. LUNEGOV'S INTEREST IN VRG
### (Mr. Mihailov and Mr. Lunegov)

262.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 146 and 143-144 as they relate to this count.

263.    Pursuant to 28 U.S.C. § 2201(a) "[i]n a case of actual controversy within its jurisdiction, [...] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

264.    The relief sought is not for the purposes of obtaining a legal advice or to answer questions propounded for curiosity.

WHEREFORE the Plaintiff requests that this court grant the following relief:

1)    A declaration that Mr. Mihailov is no longer the VRG's president;

2)    A declaration that the Plaintiff is the VRG's president;

3)    A declaration that Mr. Mihailov has to  must complete the paperwork necessary for the Florida Department of State to officially register Mr. Mikhailov's resignation as the VRG's president and the Plaintiff's becoming the VRG's president;

4)    A declaration that Mr. Mihailov's and Mr. Lunegov's interest in VRG or its assets in extinguished as obtained by fraud and/or in violation of Mr. Mihailov's and Mr. Lunegov's fiduciary duties to the Plaintiff.

*Prokopev v. Lunegov et al*

5) A declaration that Mr. Mihailov must deed the Apopka Property to the Plaintiff and return to the Plaintiff the sale proceeds from the Buick.

6) A declaration that this case is exceptional under 35 U.S.C.A. § 285 and awarding the Plaintiff his attorneys' fees, costs, and expenses incurred against Mr. Mihailov; and

7) Such other and further relief as this court deems just and proper.

<b>COUNT 19 - CIVIL THEFT</b><br><b>(Mr. Mihailov)</b>

265. The Complaint will be amended to include the Civil Theft count against Mr. Lunegov once the notice requirement of §772.11(1) Fla. Stat is satisfied.

<b>COUNT 20 – CONSPIRACY TO DIVEST THE PLAINTIFF OF HIS INTEREST IN VRG</b><br><b>(Mr. Mihailov and Mr. Lunegov)</b>

266. The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 142-145 as they relate to this count.

267. Mr. Mihailov and Mr. Lunegov conspired to DIVEST THE PLAINTIFF OF HIS INTEREST IN VRG by increasing and securing their own interests on the Plaintiff's expense.

268. In furtherance of the conspiracy, Mr. Mihailov and Mr. Lunegov devised a plan to artificially inflate the level Mr. Mihailov recovery to $1,425,000.00 by arbitrary assigning a value of $1.425 per shares to one million shares of VRG so he can claim a 10% of the recovered property value from the Plaintiff and to secure Mr. Lunegov's 61 % interest in VRG or the apartments' sale proceeds "by March 1, 2023 or by the moment when listed properties loans are paid off."

269. Mr. Mihailov and Mr. Lunegov possibly committed other, yet to be identified overt

*Prokopev v. Lunegov et al*

acts, in pursuance of the conspiracy.

270.   The purpose of the conspiracy was to injure, dissipate or otherwise decrease the Plaintiff's interest in VRG and increase their own.

271.   As a proximate result of the above-described conspiracy, the Plaintiff was damaged.

WHEREFORE, The Plaintiff demands judgment against Mr. Mihailov for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

### <u>COUNT 21 - UNJUST ENRICHMENT</u>
**(Mr. Lunegov and RUSSIAN-AMERICAN DEVELOPMENT COMPANY LLC "RAD")**

272.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above specifically the paragraphs 80-85 as they relate to this count.

271.   The Plaintiff has conferred a benefit on Mr. Lunegov and RAD in the form of an amount in a neighborhood of $1,666,442.27 and   Mr. Lunegov and RAD had the knowledge thereof and which Mr. Lunegov and RAD voluntarily accepted.

272.   Mr. Lunegov and RAD have been unjustly enriched by an amount in a neighborhood of $1,666,442.27.

273.   Under such circumstances, it would be inequitable for Mr. Lunegov and RAD to retain these funds without paying to the Plaintiff the value thereof.

WHEREFORE, The Plaintiff demands judgment against Mr. Lunegov and RDA for compensatory damages, punitive damages, attorney's fees and court costs, and any other relief the Court deems equitable, just, and proper.

*Prokopev v. Lunegov et al*

## COUNT 22 – EQUITABLE LIENS
### (Mr. Lunegov and RAD)

273.   The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically the paragraphs 80-85 as they relate to this count.

274.   From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff as amount in the neighborhood of $1,666,442.27.

275.    Some of that amount was used purchase Mr. Lunegov's the following real estate:

1.   301 Bassedena Cir N, Lakeland, FL 33805 Polk County, acquired on January 28 2022 for $125,500.00, (Ex. 35).

2.   111 Palmetto Lane W, Polk City, FL 33868 Polk County, acquired on October 2, 2020 from  Alfa Pro, Inc. for $60,000.00, (Ex. 36).

3.   6925 SHIMMERING DR LAKELAND FL 33813, Polk County, acquired on August 26, 2022 for $276,000.00, (Ex. 37).

4.   12712 Whisper Cir, Hudson FL Pasco County acquired on Aril 11, 2022, Inc. for $151,200, (Ex. 38).

5.   12819 Kellywood Cir, Hudson, FL 34669 Pasco County, acquired on August 26, 2022 from Alfa Pro, Inc. for $67,005.00, (Ex. 39).

6.   5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County, acquired on April 13, 2022  for $199,000.00, (Ex. 40).

7.   1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County, acquired on August 5, 2022  for $869,000.00, (Ex. 41) with the mortgage to Civic Financial Services, LLC for $695,200.00, executed on the same day, (Ex. 42).

*Prokopev v. Lunegov et al*

276.    Mr. Lunegov has not repaid these money to the Plaintiff.

277.    Mr. Lunegov was unjustly enriched because the Plaintiff partially paid off a debt that otherwise would have to be paid on these properties.

278.    The Court should impose an equitable lien on:

1.  301 Bassedena Cir N, Lakeland, FL 33805 Polk County,

2.  111 Palmetto Lane W, Polk City, FL 33868 Polk County.

3.  6925 SHIMMERING DR LAKELAND FL 33813, Polk County.

4.  12712 Whisper Cir, Hudson FL Pasco County.

5.  12819 Kellywood Cir, Hudson, FL 34669 Pasco County.

6.  5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County.

7.  1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County.

279.    The Plaintiff has no adequate remedy at law for the reasons including, but not limited to, Mr. Lunegov's insolvency as evidenced by a judgment of foreclosure entered against him on March 7, 2023 in the Manatee County, FL case number 412022CA004655CAAXMA. (Ex. 27). His further insolvency by hiding or unloading of assets in an anticipation of this action may be revealed further through discovery conducted in this case. Furthermore, RAD's corporate entity is merely as sham put in place to defraud and injure the Plaintiff and therefore should be disregarded.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment establishing an equitable lien on the properties described in the paragraphs 82 and 278 of this Complaint for the Plaintiff's benefit, awarding him attorney's fees, and for such other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 23 –FORECLOSURE OF AN EQUITABLE LIEN - 301 Bassedena Cir N, Lakeland, FL 33805 Polk County
### (RAD)

280.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 80-85 as they relate to this count.

281.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

282.    Mr. Lunegov has not repaid these monies to the Plaintiff.

283.    An equitable lien on 301 Bassedena Cir N, Lakeland, FL 33805 Polk County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 301 Bassedena Cir N, Lakeland, FL 33805 Polk County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 301 Bassedena Cir N, Lakeland, FL 33805 Polk County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Polk County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 24 –FORECLOSURE OF AN EQUITABLE LIEN- 111 Palmetto Lane W, Polk City, FL 33868 Polk County
### (RAD)

284.  The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 80-85 as they relate to this count.

271.  From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272.  Mr. Lunegov has not repaid these monies to the Plaintiff.

273.  An equitable lien on 111 Palmetto Lane W, Polk City, FL 33868 Polk County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 111 Palmetto Lane W, Polk City, FL 33868 Polk County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 111 Palmetto Lane W, Polk City, FL 33868 Polk County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Polk County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 24 –FORECLOSURE OF AN EQUITABLE LIEN - 6925 SHIMMERING DR LAKELAND FL 33813, Polk County
### (RAD)

285. The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 80-85 as they relate to this count.

271. From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272. Mr. Lunegov has not repaid these monies to the Plaintiff.

273. An equitable lien on 6925 SHIMMERING DR LAKELAND FL 33813, Polk County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 6925 SHIMMERING DR LAKELAND FL 33813, Polk County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 6925 SHIMMERING DR LAKELAND FL 33813, Polk County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Polk County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## COUNT 25 –FORECLOSURE OF AN EQUITABLE LIEN - 12712 Whisper Cir, Hudson FL Pasco County
### (RAD)

286.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically the paragraphs 80-85 as they relate to this count.

271.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272.    Mr. Lunegov has not repaid these monies to the Plaintiff.

273.    An equitable lien on 12712 Whisper Cir, Hudson FL Pasco County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 12712 Whisper Cir, Hudson FL Pasco County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 12712 Whisper Cir, Hudson FL Pasco County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Pasco County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

### COUNT 26 –FORECLOSURE OF AN EQUITABLE LIEN - 12819 Kellywood Cir, Hudson, FL 34669 Pasco County
### (RAD)

287.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically the paragraphs 80-85 as they relate to this count.

271.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272.    Mr. Lunegov has not repaid these monies to the Plaintiff.

273.    An equitable lien on 12819 Kellywood Cir, Hudson, FL 34669 Pasco County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 12819 Kellywood Cir, Hudson, FL 34669 Pasco County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 12819 Kellywood Cir, Hudson, FL 34669 Pasco County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Pasco County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

## <u>COUNT 27 –FORECLOSURE OF AN EQUITABLE LIEN - 5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County</u>
### (RAD)

288.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 80-85 as they relate to this count.

271.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272.    Mr. Lunegov has not repaid these monies to the Plaintiff.

273.    An equitable lien on 5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on the 5164 Coral Way N, Saint Petersburg, Fl 33714 as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Pinellas County, Florida, according to law, and that all proceeds of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

*Prokopev v. Lunegov et al*

### COUNT 28 –FORECLOSURE OF AN EQUITABLE LIEN - 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County
### (RAD and CIVIC FINANCIAL SERVICES, LLC)

289.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160 above and specifically the paragraphs 80-85 as they relate to this count.

271.    From 2019 to 2022, Mr. Lunegov accepted from the Plaintiff an amount in the neighborhood of $1,666,442.27.

272.    Mr. Lunegov has not repaid these monies to the Plaintiff.

273.    An equitable lien on 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County resulted from this transaction since these Mr. Lunegov has been unjustly enriched to the extent of an amount in a neighborhood of $1,666,442.27 at the Plaintiff's expense.

274.    CIVIC FINANCIAL SERVICES, LLC as the mortgagee of 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County claims or may claim some right, title, or interest in or to 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County, each of which claim is junior and inferior to Plaintiff's claim.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment foreclosing an equitable lien on 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County as follows: an amount in the neighborhood of $1,666,442.27 or such other amount as may be determined through the Accounting and discovery, together with interest according to law as damages; the sum of $10.00 for cost of recording the lien; together with attorney's fees and interest, be ordered as a lien against 1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County, senior and superior to any claim of right, title or interest in or to the real property of any Defendant, and that the real property be ordered sold by the Sheriff of Osceola County, Florida, according to law, and that all proceeds

*Prokopev v. Lunegov et al*

of sale be applied to Plaintiff's claim and to the cost of these proceedings and the sale of the real property; reasonable attorney's fees and costs; and any other relief as this Court deems just and proper.

### COUNT 29 – EQUITABLE ACCOUNTING
**(RAD)**

290.    The Plaintiff incorporates, adopts, and re-alleges as though fully set forth herein, each and every allegation in paragraphs 1 through 160  above and specifically the paragraphs 80-85 as they relate to this count.

274.    The Plaintiff, Mr. Lunegov and RAD, through Mr. Lunegov shared business relationship in the course of which the Plaintiff transferred  by wire or otherwise gave Mr. Lunegov and RAD large sums of money.

275.    The transactions between the Plaintiff, Mr. Lunegov and RAD involve extensive or complicated accounts and  it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity.

276.    Without accounting, the Plaintiff is unable to determine what exactly  Mr. Lunegov did with his investment and how much of his investment and the income due to him under the January 31, 2020 Agreement was used to acquire each of the following properties:

1.  301 Bassedena Cir N, Lakeland, FL 33805 Polk County,

2.  111 Palmetto Lane W, Polk City, FL 33868 Polk County.

3.  6925 SHIMMERING DR LAKELAND FL 33813, Polk County

4.  12712 Whisper Cir, Hudson FL Pasco County

5.  12819 Kellywood Cir, Hudson, FL 34669 Pasco County

6.  5164 Coral Way N, Saint Petersburg, Fl 33714 Pinellas County

7.  1012 Jeater Bend Dr Kissimmee, FL 34747 Osceola County

*Prokopev v. Lunegov et al*

WHEREFORE, the Plaintiff is asking this enter an order permitting accounting of the transactions between the Plaintiff, Mr. Lunegov and RAD and for such further relief that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**Dated: March 23, 2023**

Respectfully submitted,

THE LAW OFFICES OF BRUCE PROBER, P.A.
Attorney for the Plaintiff
500 NE 4th Street, Suite 200
Ft. Lauderdale, FL 33301
Telephone:     (954) 816-1260
Facsimile:     (954) 333-1505
Email: bprober@proberlaw.com
By:   /S/ Bruce Prober
Bruce Prober, Esq.
FBN: 895881